IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

```
PEGGY SEGELBERG,             )
                             )
          Plaintiff,         )     8:04CV573
                             )
     v.                      )
                             )
AUTO CLUB GROUP, f/k/a       )     MEMORANDUM OPINION
CORNHUSKER MOTOR CLUB        )
INSURANCE ASSOCIATION AND    )
MOTOR CLUB SPECIAL SERVICES, )
A non-resident corporation,  )
                             )
          Defendant.         )
_____)
```

This matter is before the Court on defendant's motion for summary judgment (Filing No. 28). The plaintiff, Peggy Segelberg, contends that her employment with the defendant was improperly terminated on October 31, 2003, because she had been verbally assured that her employment with the defendant would not be terminated unless she was first placed on probation for three full months. The Court has reviewed the motion, the briefs of the parties, and the evidence submitted in support thereof and finds defendant's motion for summary judgment should be granted.

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party

moving for summary judgment must always bear "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see* NELR 56.1(a).  When the party seeking summary judgment carries its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1996); *see* NELR 56.1(b). Because inferences are often the basis of an employment discrimination claim, "summary judgement should not be granted unless the evidence could not support any reasonable inference of discrimination."  *Breeding v. Arthur J. Gallagher and Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999).

At the summary judgment stage, the evidence is viewed in a light most favorable to the nonmoving party, with all inferences drawn in that party's favor.  *See Matsushita Elec. Indus.*, 475 U.S. at 587.  In making this review, the Court is particularly aware that it does not "weigh the evidence and

determine the truth of the matter" but instead determines "whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## II.   BACKGROUND

On June 1, 2001, the plaintiff Peggy Segelberg ("Segelberg") signed a sales agent employment agreement ("Employment Agreement") with the defendant, the Auto Club Group ("AAA").  The Employment Agreement was effective August 1, 2001, and specified that "the Company and the Employee agree that his/her employment can be terminated with or without cause, at any time, at the option of either the Company or the Employee." (Attachment 1 to Aff. of Mark Sisson).

On February 3, 2003, Segelberg and AAA entered into a Sales Agent Performance Requirements Agreement ("Performance Agreement") as Addendum "A" to the August 1, 2001, Employment Agreement.  The Performance Agreement stated "'Employment at Will,' Employee understands and agrees that nothing contained in this [Performance Agreement] shall be construed to create a certain term of employment under this Agreement.  It remains the intent of the parties that employment can be terminated, with or without cause, at any time, at the option of the Company or the Employee."  (Att. 2 to Sisson Aff).  Segelberg read the Performance Agreement, including paragraph "F" entitled "Employment at Will" before she signed it on February 3, 2003.

(Segelberg Depo. 47:3-9).  The Performance Agreement was effective April 1, 2003.

Under the Performance Agreement, Segelberg had a life insurance sales quota she was expected to meet on a quarterly basis.  (Performance Agreement, ¶ B1).  If Segelberg failed to meet her quota for a quarter, then she would be placed on probation for the next quarter.  (Performance Agreement, ¶ B2).  If Segelberg failed to meet her sales quota for a quarter while on probation, her employment could be terminated immediately.  (Performance Agreement, ¶ B2).  Performance sales quotas were cumulative, meaning that if Segelberg failed to meet her quota for a quarter and was put on probation, she had to make up the shortfall for the previous quarter in addition to meeting the regular sales quota in the ensuing quarter.  (Performance Agreement, ¶ C).

On June 9, 2003, Segelberg was notified by the Territory Sales Manager that she was not on pace to meet her life insurance sales quota for the second quarter which would end on June 30, 2003.  Segelberg did not meet the quota for the quarter and was notified by a letter on August 4, 2003, that she was placed on probation for the third quarter because she had failed to meet her life insurance sales quota for the second quarter.[1]

---

[1] Segelberg's quarterly life insurance sales quota was $625.00.  Segelberg's actual life insurance sales were zero for the second quarter of 2003.

-4-

The probation would be effective for the months of July, August and September, 2003.

On October 10, 2003, Segelberg was contacted by Mark Sisson ("Sisson") via e-mail that she had failed to meet AAA's minimum life insurance sales requirements for the third quarter while on probation. Sisson and Segelberg met on October 15, 2003, and Segelberg was terminated on October 16, 2003. Her termination was effective October 31, 2003.

On September 20, 2004, Segelberg filed a complaint in the District Court of Douglas County, Nebraska, alleging breach of contract. Segelberg's complaint specifically referenced her Employment Agreement signed on June 1, 2001, and the Performance Agreement signed on February 3, 2003, asserting that pursuant to these agreements she was employed by AAA and was terminated "in violation of the policies set forth in [Segelberg's] employment contract with the defendant." (Complaint ¶ 5).

AAA removed the action to this Court and filed its answer on October 17, 2005.

### III.   DISCUSSION

Nebraska is an employment at will state. *White v. Arden, Inc.* 430 N.W.2d 27 (Neb. 1988). As such, an "at-will" employee can be terminated with or without cause at any time.

*Malone v. American Business Systems*, 634 N.W.2d 788, 790 (Neb. 2001).

In the present case, both Segelberg's Employment Agreement and the Performance Agreement specifically stated that Segelberg's employment was "at-will."  Furthermore, the Employment Agreement specified that without written approval from the company president, no one was authorized to enter into any agreement for employment for any specific time, or to enter into any agreement contrary to any of the terms set forth in this agreement.  Thus, all documents that Segelberg's complaint referred to as "contract documents" specify that her employment is "at-will."  Under Nebraska law, AAA could discharge Segelberg for any reason which did not violate public policy.  *Malone*, 634 N.W.2d at 790.  Where Segelberg does not allege any violation of public policy, and the Court is not aware of any violation of public policy, AAA lawfully terminated her employment effective October 31, 2003.

While Nebraska is an employment at will state, parties can enter into employment contracts.  Here, AAA and Segelberg entered into the Performance Agreement on February 3, 2003, under which Segelberg had sales quotas which she was required to meet on a quarterly basis.  The Performance Agreement specified that if Segelberg failed to meet her sales quota for a quarter, she would be placed on probation for the ensuing quarter.

(Performance Agreement ¶ B1).  Here, Segelberg failed to meet her sales quota for the second quarter of 2003, and she was placed on probation for the third quarter of 2003.  When Segelberg subsequently failed to meet her sales quota for the third quarter while on probation, the Performance Agreement specifies that Segelberg would be terminated.  (Performance Agreement ¶ B1).  Thus, AAA's termination of Segelberg was proper under the terms of the Performance Agreement because she failed to meet her third quarter 2003 sales quota while on probation for failing to meet her sales quota for the second quarter of 2003. Therefore, AAA's action in terminating Segelberg was proper under the terms of the Performance Agreement.

Segelberg alleges that Sisson verbally assured her that she could not be terminated until she had been on probation for three full months.  (Segelberg Depo. 43:15-19).  Segelberg was on probation for three full months -- July, August and September, 2003.  Thus, even if, for purposes of summary judgment, the Court accepts Segelberg's assertion as true, Segelberg was in fact on probation for three full months.  Therefore, defendant's motion

for summary judgment will be granted.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 10th day of January, 2006.

BY THE COURT:

/s/ Lyle E. Strom
_____
    LYLE E. STROM, Senior Judge
    United States District Court